United States District Court

Eastern District of Louisiana

Amer Metrocomm Corp

v.                                     CIVIL ACTION NO. 2:00-cv-02055 L 2

Cisco Systems Inc


The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

    (1) A list of all parties still remaining in this action;

    (2) Copies of all pleadings, including answers, filed by those parties in state court; and

    (3) Copies of the return on service of process on those parties filed in state court.


New Orleans, Louisiana, July 12, 2000.


By Direction of the Court


LORETTA G. WHYTE, CLERK

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 JUL 11  PH 4: 13

LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

AMERICAN METROCOMM
CORPORATION,
     Plaintiff

NO. **00-2055**

vs.

CISCO SYSTEMS, INC.,
CISCO SYSTEMS CAPITAL
CORPORATION and LORENE AREY,
     Defendants

SECTION _____

JUDGE **SECT L MAG 2**

MAGISTRATE NO. _____

MAG. JUDGE _____

## NOTICE OF REMOVAL OF CIVIL ACTION

TO THE HONORABLE JUDGES OF SAID COURT:

    COME NOW, defendants, Cisco Systems, Inc. ("Cisco"), Cisco Systems Capital Corporation

("Cisco Capital"), and Lorene Arey ("Arey") (collectively, "Defendants") and file this Notice of

Removal of Civil Action and in support thereof show the Court as follows:

    1.    Cisco, Cisco Capital, and Arey are defendants in a civil action originally filed on June

16, 2000, in the Civil District Court, Division A, Parish of Orleans, State of Louisiana, Cause No.

2000-9514, styled *"American MetroComm Corporation v. Cisco Systems, Inc., Cisco Systems

Capital Corporation, and Lorene Arey."* A true and correct copy of the Petition for Damages filed

-1-



Fee /50 oo
Process _____
X Dktd _____
CtRmDep _____
Doc.No. _____

by plaintiff American MetroComm Corporation ("AMC") is attached hereto as Exhibit A.

2.      This Notice of Removal is timely filed under 28 U.S.C. § 1446(b).  AMC filed this action on June 16, 2000.  Removal is timely when filed within thirty (30) days of service of the petition.  Defendant Cisco was served on June 23, 2000.  Defendant Cisco Capital was served on June 27, 2000.  A copy of the summons and service documents to Defendants are attached hereto as Exhibit B, *in globo*.  Defendant Arey has not yet been served.  This removal thus is timely.

### Background

3.      This is one of several actions arising out of the 1999 direct and indirect sale of advanced telecommunications equipment manufactured by Cisco (the "Equipment") to AMC.  Cisco Capital provided AMC financing for the transactions, the value of which exceeded $50 million. There are several pending actions involving these transactions in multiple jurisdictions, including California, Florida and Louisiana.

4.      Here, and in other litigation, AMC claims that there are defects in the Equipment. AMC also has alleged that Worldwide Web Systems, Inc. ("Worldwide"), which provided AMC with software, support and technical services for the Equipment, did not perform its duties in a workmanlike manner.  AMC contends that Worldwide did not have the proper required expertise and further alleges that Worldwide was certified and recommended to support the AMC network due in part to over $5 million in allegedly improper payments paid by Worldwide to companies alleged by Worldwide to be controlled primarily by two former Cisco salesmen, Kevin Bennett and Vincent Rotundo.  Exhibit A, ¶¶ XVII-XX.  AMC contends that Cisco's certification of Worldwide to service the Equipment  resulted from the allegedly improper payments and not due to Worldwide's expertise.  AMC claims that these allegedly improper payments improperly inflated AMC's costs

in the transaction and deflated AMC's credit line with Cisco Capital.

5.      On April 26, 2000, Cisco filed action in the United States District Court for the

Northern District of California an action entitled "*Cisco Systems, Inc. v. American MetroComm*

*Corp., et al.*, No. C-04-20460 (the "California Action") against Worldwide and AMC, seeking, *inter*

*alia*, damages in excess of $50 million from AMC . The California action involves substantially the

same subject matter as the claims that AMC raises against Cisco in this action.

6.      On May 9, 2000, AMC filed suit in the United States District Court for the Eastern

District of Louisiana, captioned "*American MetroComm Corp. v. Cisco Systems, Inc., et al.*," No. 00-

1389 (the"Louisiana Action"), seeking damages relating to the sale of allegedly defective products.

7.      Subsequent to the filing of the California and Louisiana Actions, the May 29, 2000

edition of the *New Orleans City Business* published an article entitled "MetroComm fights $53

million lawsuit by Cisco" by staff writer Keith Brannon (the "Article").  See Petition, Exhibit A.

The Article addressed the pending legal disputes between Cisco and AMC.  The Article includes

numerous alleged quotes and statements attributed to various people, including defendant Arey.

8.      AMC filed the instant action claiming that the statements in the Article attributed to

Arey are defamatory.  AMC complains of the following alleged Arey statements in the Article:

> Arey says Cisco is claiming that AMC knew of the kickback scheme
> and cooperated.    "Both companies knew what the other companies
> were doing. AMC was telling Cisco Capital to pay Worldwide before
> they themselves ever received equipment," she says.
>
> * * *
>
> Arey confirm[ed] that the Federal Bureau of Investigation is
> investigating allegations of corruption surrounding Cisco's deal with
> AMC because of an alleged arrangement one or both companies had
> with reseller Worldwide Web Systems.

Exhibit A, ¶ XXX.  AMC claims that its "reputation has been damaged" due to the statements attributed to Arey in the Article.  Exhibit A, ¶ XLI.  AMC seeks monetary damages from Cisco, Cisco Capital and Arey.

## Basis for Jurisdiction

9.     This Court has diversity of citizenship jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1441.

10.     As is evident from the face of the Petition, the parties to this action are diverse. Plaintiff AMC is a Delaware corporation, with its principal place of business in New Orleans, Louisiana.  Exhibit A, ¶ II.  Defendant Cisco is a California corporation with its principal place of business in San Jose, California.  Id., ¶ III.  Defendant Cisco Capital is a Nevada corporation with its principal place of business in San Jose, California.  Id., ¶ IV.  Defendant Arey is an individual over the age of majority and a domiciliary of California.  Id., ¶ V.  Plaintiff AMC (a Louisiana domiciliary) thus remains diverse from all defendants (California and Nevada domiciliaries).  The parties are diverse now and were diverse when AMC filed its Petition.

11.     The amount in controversy here is greater than the jurisdictional amount of $75,000.00, exclusive of interest or costs.  In this action, AMC seeks monetary damages for the alleged injury caused to its reputation due to the allegedly defamatory statements attributed to defendant Arey in the Article.  AMC does not specify a dollar amount for its alleged damages in its Petition.  However, the original dispute centers around a transaction worth over $50 million.  The allegedly defamatory statements surround allegations of $5 million in allegedly improper payments.  Further, AMC claims over $62 million in damages in connection with the Cisco transaction.  Exhibit

A, ¶ XXVI.  AMC is a sizable telecommunications company providing service in Louisiana and Mississippi.  *See* AMC's website, amccom.com.  Although defendants deny the AMC has been defamed or damaged, given the size of the transactions involved, the nature of the plaintiff and the fact that the publication of the allegedly defamatory statements took place in a weekly newspaper of general circulation, the amount in controversy satisfies the jurisdictional requirement.

12.  AMC seeks damages for alleged defamation under Louisiana law.  General damages for defamation under Louisiana law may include injury to reputation, embarrassment, and mental anguish; loss of income also is compensable as part of a defamation claim.  See also *Steed v. St. Paul's United Methodist Church*, 31,522 at 14 (La. App. 2 Cir. 2/24/99), 728 So.2d 931, 942 ($90,000 general damage award) (citations and footnote omitted).  Numerous Louisiana decisions have awarded more than $75,000 for claims similar to those AMC asserts here.  See *Trentecosta v. Beck*, 95-0096 (La. App. 4 Cir. 2/25/98), 714 So.2d 721 ($144,357.50 award for defamatory statements to newspaper that plaintiff was operating illegal business that had bilked charities out of thousands of dollars), writs denied, 98-1578 , 98-1585 (La. 10/9/98), 726 So.2d 28; *McHale v. Lake Charles American Press*, 390 So.2d 556 (La. App. 3rd Cir. 1980) ($150,000 award for defamatory statements in newspaper with circulation of 35,000; statements suggested that plaintiff practiced dishonest business practices), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).

13.    All defendants to this action are represented by undersigned counsel and consent to this removal by joining in this removal petition.

Respectfully submitted,

R. PATRICK VANCE (#13008)
EDWARD H. BERGIN (#2992)
JUDITH V. WINDHORST (#19836)
Jones, Walker, Waechter, Poitevent,
      Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170-5100
Telephone: (504) 582-8222
Telecopier: (504) 589-8222
Attorneys for Defendants
      Cisco Systems, Inc.,
      Cisco Systems Capital Corporation, and
      Lorene Arey

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on all counsel of record, via hand delivery, facsimile, and/or First Class U.S. mail, postage prepaid and properly addressed this 11th day of July, 2000.